COMMISSIONERS OF ATCHISON CO. v. P. M. TOMLINSON.

1. SHERIFF; *Undersheriff, etc.* The sheriff, and not the deputy sheriff or jailor, is entitled to compensation for supplying prisoners in the county jail.

2. CLAIMS AGAINST COUNTY, *to be Itemized, etc.* No account against a county should be allowed by the county commissioners, nor by the district court on appeal, unless the account is made out in separate items and the nature of each item stated; and where the account is for services or labor, but not for specific fees, such as are allowed by law, the time actually and necessarily devoted to the performance of such service or labor should be specified.

3. EXTRA PAY *not allowed to Sheriff.* After the sheriff has been paid by the county sixty cents per day for boarding each prisoner confined in the county jail, and has been paid in full for furnishing other supplies, he cannot be allowed by the county commissioners, nor by the district court on appeal, an additional amount for services and labor in furnishing said board or said supplies.

*Error from Atchison District Court.*

TOMLINSON presented to the board of commissioners a bill or claim, as follows: "*The County of Atchison, Kansas, to P. M. Tomlinson, Jailor, Dr., For supplying prisoners committed in criminal actions, as follows.*" Then follow the names of thirty prisoners, the date and number of days' confinement of each, showing an aggregate of 536 days, "at $2 per day, $1,072." This claim was sworn to by Tomlinson on the 31st of October 1870, and presented to the board at their January session 1871. The county board referred it to P. L. H., county attorney for "his opinion relative to the legality of said account," and said attorney gave his opinion in writing that said account was a legal and proper claim against the county. The nature or character of the "supplies" charged for was not stated. The commissioners *disallowed* said account, and *Tomlinson* appealed to the district court. No formal pleadings were filed, but on the filing of the transcript by the appellant the parties filed an agreed statement of facts as follows:

"In this case it is hereby agreed that the number of days which the plaintiff has kept, boarded, and had charge of the

prisoners in the county jail, is correctly stated in his bill, and in the aggregate of 536. That for so keeping, boarding, and having charge of the same, he has been allowed heretofore and paid the sum of 60 cents per day for each prisoner, and no more; and that he has also been allowed and paid heretofore his bill in full for washing and soap for the same, and for lighting their cells. And it is agreed that there was no special agreement that the plaintiff was to have extra compensation for his services as jailor beyond what he would be entitled to under the statute, and that no other items or parts of said bill as presented· by plaintiff have ever been allowed or paid him, or presented to the county commissioners for allowance or payment before the one now presented and sued upon. The said plaintiff is deputy sheriff, receiving his appointment from the sheriff of said Atchison county, and was acting during the time mentioned in said bill as under or deputy sheriff, and said plaintiff has been furnished with fuel free of charge during said time, and no charge has been made against plaintiff for the occupation of rooms in the jail as a residence for himself and family. And the only questions remaining are—First, Is plaintiff entitled to anything additional for his time and personal services in the procuring of supplies and furnishing same to prisoners, and the personal care and attention necessarily given to said prisoners and their cells? Second, If anything, how much? The first of these questions is for the court; the second for the jury."

The action was tried at the June Term 1871. The court, in answer to the first question, held that *Tomlinson* was entitled to recover; and a jury being empanneled and sworn, they assessed the amount due the plaintiff at $1,072, for which judgment was rendered. The *Board of Commissioners* excepted, and bring the case here on error.

*F. D. Mills*, for plaintiff in error:

The question in this case is, whether defendant in error was entitled to any additional allowance under the statute for supplying prisoners. The court below held he was, and this we claim is error.

The sheriff can have for his services no other fees or compensation than is allowed in the fee bill, except as may be otherwise provided by law. Gen. Stat., p. 475. There must

be some positive provision made by law, or his claim cannot be allowed. The plaintiff's claim in this case (if there is any law for it,) must be based on the act of 1868. Gen. Stat., p. 530. Sec. 10 of this act says: "When a prisoner is committed in a criminal action, the county board shall allow the sheriff his reasonable charges for supplying such prisoners." What is meant by the words "supplying such prisoners?" Supplying what? What does that section contemplate the sheriff shall supply? If there is any obscurity in the intention and meaning of that section we have only to refer to § 3 of the same act, and there we find that the sheriff is required to supply proper bread, meat, drink, and fuel. It is shown that Tomlinson had already put in a bill and been allowed and paid for boarding prisoners, for supplying soap, candles, and washing clothes. If the prisoners require medical attendance, that is paid by the county to the attending physician. What then is the service for which Tomlinson claims $2 per day? It will be noticed that his bill is for a *per diem* allowance, for *services*. It does not state each specific service, the time actually and necessarily devoted thereto, etc., as required by § 28, ch. 25, Gen. Stat. But what was the service? Was it going after a physician? or to purchase a bible? or to take the prisoners a cup of water? or to carry or send their clothes to be washed? We submit that all this is included in the boarding of the prisoners. But it will hardly be claimed that Tomlinson gave actual and necessary service of a whole day to *each* prisoner in providing medicine, or a bible, etc. If such were the case as many deputies would be required as there were prisoners. And yet he has claimed just that, and the court below allowed it.

It is also proper to consider that the jailor is furnished with a dwelling-house, and with fuel, etc., at the expense of the county. If he is to be paid by the county, as claimed in this case, he should be charged for house rent, fuel, etc., for himself.

*Otis & Metcalfe,* for defendant in error:

The only question in this case is, was the plaintiff below

entitled to anything additional for his time and personal services, in the procuring of supplies and furnishing the same to prisoners, and in the personal care and attention necessarily given to said prisoners and their cells, over and above what had been paid him? In other words, does the 60 cents per day for boarding prisoners allowed by the fee bill, (Gen. Stat., p. 477,) include pay for all the services necessarily rendered by the sheriff in the care and custody of prisoners as well as pay for the meat, bread, drink and fuel furnished them under § 3, p. 530? The county attorney advised the county board that it did not; and in the district court on appeal, the district judge, as we hold, properly decided that plaintiff below was entitled to recover for services and for supplying prisoners, in addition to the 60 cents per day, and that that item was for board alone.

The fee bill took effect March 10th, 1868. But § 10, p. 530, Gen. Stat., took effect Oct. 31st, 1868, and provided that when a prisoner is committed in a criminal action, "the county board shall allow the sheriff his reasonable charges for supplying said prisoner." Why this provision for "reasonable charges," if the amount was absolutely fixed by the fee bill, and at 60 cents per day? This § 10 evidently contemplates that the county board shall examine the account, hear evidence, determine whether it is reasonable or unreasonable, then pass upon it—allow, or disallow it. All this would be superfluous if the sheriff was entitled to his fixed rate per day, and no more, and the action would be practically meaningless and without force. It is a well-settled rule of law that different acts on the same subject must be construed together, and both stand if possible. In this case giving each act its proper significance, there is no conflict. Sec. 3, p. 530, provides that the sheriff shall supply proper bread, meat, drink and fuel. This is what is meant by the term "boarding." But there are other things to be done by the sheriff besides furnishing the prisoner meat, bread, drink, fuel and lodging—and these last-named five items are all that boarding can include in its broadest sense. Sec. 6 of the

same act requires him to provide bibles and testaments. By § 3, he is made responsible for the manner in which the jail is kept. Secs. 1 and 2, same act, provide that the jail shall be kept at the expense of the county, and that the district judge shall personally inspect it as to sufficiency both for safe-keeping, and for the convenient accommodation and health of prisoners. The sheriff then, being responsible for the manner in which the jail is kept, must not only board, lodge, and safely keep the prisoners, but must also perform all duties, and make all provisions, necessary for their convenient accommodation and health. The washing, candles, soap, the every-day cleaning of the cells, the nursing of sick prisoners, the procuring medicines, and medical attendance, the special expenses in case of deaths—these are all necessary jail services to be performed by the sheriff of the county, essential for the convenient accommodation and health of prisoners, and to ward off contagious diseases from the jail and community. A county board would be derelict and inhuman that did not require these things done; and § 10 evidently contemplates how the officer shall be paid for doing them. And see 10 Ind., 286.

2. The terms of the agreed statement of facts precludes inquiry as to the form of the account presented, or whether the deputy or his principal should have presented it. The defendant below expressly rested their case on the two questions presented; of course they waived all others, and plaintiff was not required to prepare for or meet any others. The account was properly presented in name of plaintiff. He was the real party in interest. By agreement with the sheriff he was entitled all fees and pay for services as jailor.

The sheriff can no more be charged for house rent or fuel than a county treasurer, or a register of deeds, or a district clerk. The jail, as a public county building, cannot be rented out. The county board cannot charge or receive rent for it. 8 B. Monroe, 282; 2 Bush., 144.

The opinion of the court was delivered by

Valentine, J.: On the 3d of December 1870 the

defendant in error P. M. Tomlinson filed in the office of the county clerk of Atchison county a claim against said county for supplying prisoners. On the 2d of January 1871 he presented said claim to the board of county commissioners for their examination and allowance. The board examined the same but disallowed it. Tomlinson then appealed to the district court. In the district court the parties in addition to said claim filed a written stipulation admitting the truth of certain facts, and presenting to the court only two questions for consideration—one of law for the court, and one of fact for the jury. The question of law was, whether upon the claim presented by Tomlinson, and the facts admitted by the parties, taken together, there was any liability on the part of the county to Tomlinson, and if there was, then, as a question of fact, what was the amount of that liability? The question of law was presented to the court and decided before the jury were impanneled, and proper exceptions were taken to the decision of the court. This was sufficient to enable the party excepting to bring the question to this court. But as the decision was against the county the counsel for the county thought proper to again present the question to the court, which he did at two or three other and different times, and at each time the decision was against the county. The court decided the question a second time by admitting evidence over and against the objections of the defendant below, and again in charging the jury, first, by giving the first instruction asked for by the plaintiff Tomlinson, and second, by refusing to give the first and sixth instructions asked for by the defendant below. The question of fact was found by the jury. They found that the amount of the liability of the county to Tomlinson was $1,072. Judgment was rendered against the county and in favor of Tomlinson for that amount, and from that judgment the county now appeals to this court.

The question of law is now presented to us. With the question of fact we have nothing to do. We think the court below decided the question of law erroneously. Upon the

claim presented to the county commissioners they (the commissioners) decided correctly. The claim did not show upon its face any liability on the part of the county to Tomlinson. It did not make out a *prima facie* case in his favor. And even if it had done so, it was not in such a form that it could legally be allowed. First, it showed that Tomlinson was only the undersheriff and jailor of said county, and that he was not the sheriff, to whom only the county is liable for supplying prisoners. Nor did it show any agreement on the part of the county to pay Tomlinson for supplying prisoners, nor that the sheriff had in any manner transferred his right to compensation for supplying prisoners to Tomlinson. Second, the claim was not properly itemized as prescribed by law: Gen. Stat., 259, ch. 25, § 28. Said claim showed that it was a claim for supplying certain prisoners on certain days at two dollars per day. But it did not show what kind of supplies was furnished, nor what was the nature of the service or labor in furnishing them. No pleadings in form were filed in the district court by either party. The said claim and the said written stipulation were intended by the parties to answer for pleadings. If they showed a cause of action in favor of the plaintiff and against the county then the court decided correctly in submitting the question as to the amount of the claim to the jury; but if they did not *prima facie* show such a cause of action, then of course the court erred in its decision. We have already seen that the claim alone did not show such a cause of action. The question now is whether the claim and stipulation taken together did. We think they did not. The written stipulation did not assist the claim where the claim was defective. In fact it had rather the effect to show that if the claim had been *itemized* and presented by the *sheriff himself* it could not legally have been allowed. The stipulation showed that the county had already paid sixty cents per day (all that the law allows,) for boarding each of said prisoners, and had paid in full for washing, for soap, and for lights and had furnished fuel, and rooms in the county jail for the jailor, free of charge. For what then was

Tomlinson's claim? Was it for furnishing such articles only as were mentioned in the claim and stipulation, or was it for furnishing other articles? Was it for the value of the *articles* furnished, or was it for the value of the *service or labor* performed in furnishing the same? It could not be for furnishing articles not mentioned in the claim or stipulation, for the law requires that no account against a county shall be allowed "unless the same shall be made out in separate items, and the nature of each item stated. And where no specific fees are allowed by law," (and we suppose that no one will claim that the claim of Tomlinson was for specific fees,) "the time actually and necessarily devoted to the performance of any service charged in such account shall be specified." (Gen. Stat. 259, ch. 25, § 28.) This law we suppose governs the district court in cases taken there on appeal as well as the board of county commissioners from whom the appeal is taken. We hardly suppose that the district court is authorized to allow a claim or account so defective in form or substance that the board of county commissioners could not allow it when presented to them. Neither could Tomlinson's claim be for the value of the articles furnished, for the county had already paid for such articles their full value. The claim seems to be for an additional allowance to the plaintiff below for his time and personal services in the procuring of the supplies mentioned in the stipulation, and for furnishing the same to the prisoners, and the personal care and attention connected therewith. (See latter part of the stipulation— the question of law.) If such is the claim, then he certainly cannot recover—first, because he is not the sheriff, and does not show any right from the sheriff. Second, because the sheriff himself would not be entitled to recover on such a bill or claim. The county had already paid the statutory price, or fees, for boarding the prisoners. And boarding prisoners within the meaning of the statute (Gen. Stat., 477, ch. 30, § 3,) probably includes everything necessary for the prisoners to have in eating, drinking, and sleeping, and everything necessary for them to have to properly

prepare themselves for eating, drinking, and sleeping, such as soap, towels, plates, knives and forks, and the like. And it probably not only includes the articles furnished, but also the service and labor in furnishing them. If this is the proper construction of the law, then of course the plaintiff cannot recover. Section 10 of the act concerning county jails (Gen. Stat., 531, ch. 53,) which provides that "the county board shall allow the sheriff his reasonable charges for supplying prisoners," does not repeal the other statutes fixing the fees of the sheriff for supplying prisoners. The fee for boarding prisoners is fixed by law at sixty cents per day, and no additional allowance can be made therefor, either for the articles furnished or for the labor in furnishing them. Said section 10 does not apply to such a case. It only applies to cases where the legislature have not fixed the fees for supplying prisoners, as for furnishing a prisoner with a bible or new testament, or medical aid, etc.

There was some evidence introduced and permitted to go to the jury tending to show that by an arrangement between the sheriff and the plaintiff below that the plaintiff should receive everything that should be paid by the county for supplying prisoners, but as there was no issue of this kind presented to the jury no question as to who was entitled to recover from the county for supplying prisoners, but only the question as to how much should be recovered, this evidence was wholly irrelevant and incompetent, and can now have no effect in the decision of this case.

The question as to whether the plaintiff could recover was a question of law for the court to determine upon the facts alleged in the claim and stipulation. And as we think the plaintiff did not make out a *prima facie* case by the allegations contained in said claim and stipulation, the court below erred in its decision. It should not have submitted the case to a jury at all. The judgment of the court below is reversed.

All the Justices concurring.