No. 25,319.

R. C. LEINBACH, *Appellant*, v. THE BOARD OF COUNTY COMMISSION-
ERS OF THE COUNTY OF POTTAWATOMIE, *Appellee*.

SYLLABUS BY THE COURT.

1. JURISDICTION—*Township Trustee as Overseer of Poor—Official Powers Co-
extensive With His Township.* The official powers of a township trustee
as overseer of the poor are coextensive with his township, and are not re-
stricted to those parts of his township lying outside the incorporated limits
of any cities of the third class situated within his township.

2. MEDICAL SERVICES—*Unverified Account Against County.* An unintentional
failure of a claimant to verify his account against the county for medical
services performed at the instance of an overseer of the poor is not a justi-
fiable ground for the rejection of the claim.

3. SAME—*Appeal from Board of County Commissioners to District Court.*
An appeal to the district court from an order of a nonjudicial body like the
board of county commissioners does not materially differ from an inde-
pendent action to recover on such claim. A plain statement of the material
facts and of the redress desired is sufficient.

4. SAME—*Facts Disclosed Entitle Plaintiff to Recover for Medical Services Per-
formed.* Assuming the truth of the facts alleged and admitted—that plain-
tiff, a physician, at the instance of the township trustee, as overseer of the
poor of his township, rendered medical services to a poor, moneyless and
friendless person lying dangerously ill in a third-class city in a certain civil
township over which the township trustee had jurisdiction—the county was
liable for the reasonable value of the professional services so rendered by
the physician.

Appeal from Pottawatomie district court; MARTIN A. BENDER, judge.
Opinion filed June 7, 1924. Reversed.

*Chester A. Leinbach,* of Onaga, for the appellant.

*E. S. Francis, E. C. Brookens,* and *H. L. Hart,* all of Westmoreland, for
the appellee.

The opinion of the court was delivered by

DAWSON, J.:   The plaintiff, who was a physician and surgeon,
at the request of the trustee of Mill Creek township, Pottawatomie
county, rendered professional services to Mervia Hahn, a poor,
moneyless and friendless person who was lying ill at Onaga with an
acute attack of appendicitis.   The defendant board refused to pay
plaintiff's charges therefor; hence this lawsuit.   The issues were
joined, and after plaintiff's counsel had stated the case and some

admissions had been made by counsel, defendant's motion for judgment was sustained. The statement of plaintiff's counsel reads:

"The evidence in this case will show that the city of Onaga is in Mill Creek township, Pottawatomie county, Kansas; that Mervia Hahn was not an inhabitant of the county; that she was a poor person, that she had appendicitis and that plaintiff attended her; that R. G. Guffy was township trustee, and that he selected the plaintiff to care for her; that she was taken to Wamego and there operated upon; that $150 is a fair and reasonable fee for services rendered, and that under direction of the trustee, Mr. Guffy, he procured a conveyance and took Mervia Hahn to Wamego, and that a fair and reasonable charge for such conveyance was $7.50.

"It is admitted by the parties to this action that the city of Onaga is a city of the third class and incorporated, and that Mervia Hahn was not at the time complained of an inhabitant of such city."

The following questions were asked by the court and answered by counsel for defendant:

"Q. What is the fact in regard to whether or not claim was ever filed with the board of county commissioners of Pottawatomie county, Kansas. A. There was a sort of claim filed.

"Q. There was an attempt to file a claim? A. There was a sort of claim filed; I have a copy here. It was on behalf of Dr. Leinbach and Dr. Cozier.

"Q. No appeal was taken from the action of the board? A. The claim was rejected because it was not a verified claim. It shows on its face it was ordered by the trustee. . . .

"The COURT: The motion for judgment will be sustained, and judgment for defendant against plaintiff for costs."

Defendant's counter abstract corrects the foregoing by reciting that it was admitted that Mervia Hahn *was* an inhabitant of Onaga.

From the trend of the argument in the briefs it seems to be agreed by counsel for plaintiff and defendants that the judgment of the trial court was chiefly based upon the proposition that the township trustee was without authority to bind the county for the relief of a poor person found within the city of Onaga.

It is not of vital importance whether Mervia Hahn was lawfully settled in Mill Creek township or was a stranger. The humanity of our statutes has provided for both contingencies. (R. S. 39-304, 39-306, 39-323.)

We have, then, but the narrow question whether the township trustee had any duty or authority to concern himself with the plight of Mervia Hahn, since she was lying dangerously ill, without money or friends, *inside* the corporate limits of Onaga, a city of the third class, lying within Mill Creek township. Cities of the

third class are mainly integral parts of the civil townships in which they are located. The township trustee's duties, for the most part, do not halt at the city limits. He is the tax assessor and the head functionary for the administration of the general election laws in his township, and in the exercise of these functions his duties cover his whole township, inside as well as outside of incorporated cities of the third class. As important as these are his duties as overseer of the poor. Why then should his official humanitarian activities be restricted to such parts of his township as lie outside the limits of third-class cities lying within his township? The statute admits of no such interpretation. The court holds that his duties and authority as overseer are coextensive with his township. That the governing body of the city is also an overseer takes nothing from this view; rather does it show an anxiety on the part of the legislature that where there are enough people to form a city within the township, additional overseers of the poor may be necessary, and so the statute creates them.

But there is another phase of this matter which should not be overlooked. Mervia Hahn, a poor, friendless, moneyless person, was dangerously ill in the midst of a civilized community. What was to be done? Should the poor creature die for lack of professional succor because it was the *wrong* factotum, the township trustee, rather than the mayor of Onaga, who engaged the plaintiff's professional services to relieve her distress? This court has held that the important matter in such cases is to save life and succor the distressed. (*Caton & Starr v. Osborne County*, 110 Kan. 711, 205 Pac. 341.) The question of whose official business it was to set the machinery for saving human life and for assuaging human suffering was of relatively less importance. (*Dykes v. Stafford County*, 86 Kan. 697, 706, 121 Pac. 1112.) What difference can it possibly make to the taxpayers of Pottawatomie county whether the township trustee or the mayor of Onaga gave the order that this woman be cared for? If the emergency were especially critical, it was not imperatively essential that succor for the afflicted person should be delayed until an official order for her relief could be procured from either trustee or mayor. The county board, "with an enlightened liberality as well as a cautious prudence," lawfully could and morally should pay the reasonable charges therefor without their previous sanction by the overseer of the poor. (*Smith v. Comm'rs of Shawnee County*, 21 Kan. 669. See, also, cases cited

with approval in *Dykes v. Stafford County,* 86 Kan. 697, 706, 707, 121 Pac. 1112.)

It is intimated in the briefs that plaintiff's claim was defective in that it lacked verification. If it had been rejected on that account, fair dealing required that plaintiff should have been so apprised and given an opportunity to verify it, or the county board might have required it to be verified before approving it. But it was arbitrary and unreasonable to reject it absolutely because of mere oversight to verify. It is also suggested that the rejection of plaintiff's claim might have justified an appeal, but not an independent lawsuit. But an appeal from a nonjudicial tribunal to a judicial one partakes largely of the nature of an independent action. About all the appellant can do in such an appeal is to recite the facts. Such was done in this case, and to the facts pleaded there was added the comprehensive statement by plaintiff touching the rejection of his claim, and there were also the agreed facts developed by the questions propounded by the trial court. So far as pertinent, the agreed statement of facts had the same effect as recitals in the pleadings, and thus the plaintiff's action was well founded whether required to be of the nature of an appeal or otherwise. ·(*Leisenring v. Pleasant Hill Township,* 108 Kan. 29, 193 Pac. 893.)

There was, indeed, a general denial in this case. That may mean that defendant intended to raise the issue that plaintiff never performed the alleged services for Mervia Hahn, or that they were not of the value alleged, or that Mervia Hahn was not a poor, moneyless and friendless person, or that she has since become prosperous and affluent and can pay her own doctor's bills. If defendant in good faith meant anything of this sort by its general denial, well and good. But the defense of want of authority on the part of the trustee to bind the county is worthless, and the defense of want of verification of plaintiff's claim is no better.

Reversed and remanded for further proceedings not inconsistent herewith.