JONATHAN D. NORTON, *as Sheriff, etc., Appellee,* v.
F. B. SIMMS *et al., as County Commissioners, etc.,
Appellants.*

No. 17,661.

SYLLABUS BY THE COURT.

1. SHAWNEE COUNTY JAIL—*Maintenance.* Under the governing
statute the jail of Shawnee county is to be maintained at the
expense of the county and the county is liable to the sheriff
for · necessary repairs and for necessary supplies, such as
furniture, bedding, light, heat, water, disinfectants, soap,
toilet necessities, mops, brooms and matches.

2. ——— *Same.* Such repairs and supplies are not included
within the term "boarding and lodging," for which a specific
compensation is fixed by the statute.

3. ——— *Same.* The rooms occupied by the jailer, in pursuance
of the statute, constitute a part of the jail, and the county is
liable for the maintenance of the entire institution.

4. SHERIFF'S FEES—*Attendance on Probate Court.* The sheriff is
entitled to a fee for attendance upon the probate court, al-
though he may have been absent from the court room several
times during the hearing of a case, where it appears that he
was within calling distance all the time, ready to respond to
any request, direction or order made to or upon him by the
court or the counsel engaged in the trial.

5. ——— *Mileage.* Under the statutory provision fixing the
compensation of the sheriff for travel in serving or en-
deavoring to serve process the mileage is to be computed on
the round trip basis, giving him ten cents per mile or frac-
tion of a mile on the whole journey. He is not entitled to the
full fee for the fraction on the going trip and for another
fraction on the return trip.

Appeal from Shawnee district court. Opinion filed
November 11, 1911. Affirmed.

*E. R. Simon,* county attorney, for the appellants.
*Z. T. Hazen,* and *R. H. Gaw,* for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This appeal arises out of a con-
troversy between the sheriff and the board of county
commissioners of Shawnee county in regard to the lia-

bility of the county for certain supplies necessarily used in maintaining the county jail, the right of the sheriff to fees for attending the probate court in certain cases, and the proper manner of computing mileage earned by the sheriff in serving process. The jail of Shawnee county was built in 1887 under the authority of chapter 74 of the Laws of 1886, which provided that it should include a jailer's residence, and until 1910 the expense of maintenance, including furniture, bedding, light, heat, repairs, and other articles necessary for keeping the building in a sanitary and proper condition to preserve the health and physical welfare of those occupying it, was paid by the board of county commissioners. Since November, 1910, the board has refused to pay for disinfectants, soap, toilet necessities, mops, brooms, matches, and repairs, as well as bedding and furniture, and these articles, it is agreed, are necessary to the proper maintenance of the jail. The board also refused to pay for the electric lighting of the jail and for the gas used as fuel for cooking in the residence part of the jail, and also for water used in that section of the building.

The trial court held:

"That it is the duty of the defendant Board of County Commissioners, and said board is legally obligated, to keep and maintain the jail and jailer's residence belonging to Shawnee County, described in the agreed case herein, and to pay for all electric light, gas for lights, gas or other fuel for cooking or heating, water, toilet necessities, soap, mops, brooms, disinfectants and all necessities for cleaning, repairs of all kinds, wiring for electricity, piping for gas, and the lights, furniture and bedding necessary for the use of prisoners confined in said jail, which have been heretofore furnished to said jail building or any part thereof, or which may be hereafter furnished thereto, or which may be necessary in keeping and maintaining said jail and jailer's residence in proper sanitary condition and suitable for use and occupancy with regard to the health and physical welfare of persons occupying said building or confined therein."

The holding is correct. The jail and its equipment is the property of the county and is to be maintained at its expense. The statute provides that "there shall be established and kept at every county seat, by authority of the board of county commissioners, at the expense of the county, a jail for the safe-keeping of prisoners lawfully committed." (Gen. Stat. 1868, ch. 53, § 1, Gen. Stat. 1909, § 4557.) The sheriff, who is intrusted with the safe-keeping of prisoners, is given charge of the jail, which is to be kept by him, or by his deputy or jailer, for whose acts he is responsible. (Gen. Stat. 1868, ch. 25, § 105, Gen. Stat. 1909, § 2195.) The jail is not only to be kept at the expense of the county, but it is to be maintained in a sanitary and healthful condition. To insure this the district judge and county attorney are required to make a personal inspection of the jail as to its sufficiency for the safe-keeping of the prisoners and to inquire whether it is kept for their convenient accommodation and health, and if a grand jury is in session it is required to make a like inspection, and both are to report the conditions to the county commissioners. It is made the imperative duty of the county commissioners, upon the filing of such reports, to make the necessary purchases or repairs, in accordance with the recommendations made to them. (Gen. Stat. 1868, ch. 53, § 2, Gen. Stat. 1909, § 4558.) That the jail is to be maintained at the expense of the county is indicated by other provisions of the statute relating to jails. (Gen. Stat. 1868, ch. 53, § 10, Laws 1876, ch. 85, § 1, Laws 1877, ch. 122, § 1, Laws 1905, ch. 226, § 1, Gen. Stat. 1909, §§ 4566, 4572, 4576, 4578.)

It is argued, however, that the fee specifically provided for boarding and lodging was intended to cover such supplies. The amount to be paid by the county for the boarding and lodging of prisoners in Shawnee county is fixed by chapter 304 of the Laws of 1903, as follows: "For boarding and lodging each prisoner, fifty cents per day, exclusive of lights, furniture, fuel,

and bedding." Except as to the amount this is sub-
stantially the language employed in the general act re-
lating to fees and salaries fixing the compensation of
sheriffs. (Laws 1899, ch. 141, § 9, Gen. Stat. 1909,
§ 3664.) The contention is that boarding and lodging
includes all supplies and equipment other than lights,
furniture, fuel and bedding. The terms "boarding and
lodging" do not, in their natural and ordinary mean-
ing, include repairs on the jail or other property of the·
county, nor do they cover disinfectants, toilet necessi-
ties, mops, brooms and other articles necessary to keep
the jail clean and fit for occupancy by the prisoners and
those in charge of them. The sections of the statute re-
ferred to indicate that the county is to bear the expense
of keeping the jail in a condition that will conserve the
safety and health of the prisoners, and it can not be so
kept without the use of the articles named. It was,
therefore, made the imperative duty of the county to
purchase supplies and make repairs when the commis-
sioners are informed by the district judge or grand jury
that such purchases and repairs are necessary for the
convenient accommodation and health of the prisoners.

The case of *Atchison County v. Tomlinson,* 9 Kan.
167, is cited as an authority for holding that supplies of
the kind mentioned are included in boarding and lodg-
ing. That case did not involve the liability of the
county for articles purchased by the sheriff, but it was
for personal service rendered by an undersheriff in
procuring supplies and for personal care of prisoners
and their cells. There the county had paid the expense
of the supplies purchased, and the decision was that
the officer was not entitled to additional compensation
for services and labor in procuring supplies.

It was stated in *Hendricks v. Comm'rs of Chautau-
qua Co.,* 35 Kan. 483, 11 Pac. 450, that no more could
be allowed for board and lodging than the amounts·
fixed by the legislature, but the court did not undertake·
to determine what was included in those terms.

In Indiana there was a statute, as there is here, providing that a prison should be established and kept at the expense of the county, and another fixing the compensation of the sheriff for boarding prisoners, and it was held that the word "boarding," in the ordinary sense, did not include the furnishing of fuel. (*The Board of Comm'rs of Marion Co. v. Reissner,* 58 Ind. 260.) In a later case the same court held that the county was liable to the sheriff for candles, brooms, mops, and coal, which he had purchased and used in the jail, and which were necessary for its maintenance. (*The Board of Commissioners of Marion County v. Reissner et al.,* 66 Ind. 568.) In *Bynum v. The Board of Commissioners of Greene County,* 100 Ind. 90, it was held that the sheriff was entitled to reimbursement from the county for articles of property bought for the county and necessary for use in the jail. This did not, of course, include the things purchased and used for feeding prisoners, but it was ruled that the sheriff was not entitled to extra compensation for his services in keeping the jail or looking after the prisoners committed to his charge. (See, also, *The Board of Commissioners of Vigo County v. Weeks,* 130 Ind. 162, 29 N. E. 776; *Schenck v. Mayor,* 67 N. Y. 44; 32 Cyc. 348.)

There are cases holding that the sheriff shall pay for certain supplies, but these depend upon statutory provisions which impose the obligation. The small fee prescribed for furnishing board and lodging, although not of controlling force, indicates that it was not the theory of the legislature that there should be included in these terms the repairs and supplies and upkeep of the institution. It is now conceded that light, fuel, furniture and bedding for the jail are to be provided at county expense and that the sheriff should be reimbursed for the amounts which he paid for these items. It is said, however, that the gas used for fuel in that part of the jail occupied by the jailer and his assistant

Norton v. Simms.

should not be paid for by the county. The act authorizing the building and maintenance of the jail provides that the jailer's residence shall be a part of the institution. (Laws 1886, ch. 74.) It is conceded that ever since the completion of the jail in 1887 certain rooms designed for that purpose have been occupied and used by the jailer. There is only one prison here and the jailer's residence is a part of it. Evidently it was the intention that the jailer should be present in the jail night and day to control and guard the prisoners. There is an average of thirty prisoners kept in the jail, and the theory, doubtless, was that there could be more efficient management of the prisoners if the jailer resided in the institution, where he would always be on hand to safely guard and control them as well as to minister to those who were sick and might need close or constant attention. Manifestly the provision was not made for the benefit of the jailer or the sheriff, but rather for the benefit of the public and to secure the best results in the care and keeping of the prisoners. The law provides that the jail, not a part of it, shall be maintained at the expense of the county, and the fact that some rooms in it are occupied by the jailer in charge of the prisoners is not a sufficient reason for segregating one part of the jail from the other nor for making any distinction in the expense of maintaining the different parts of the building. Heat, light and water are necessary in all parts of the jail, and while a little water may be used on the table in boarding the prisoners it is not separated from that used in the rooms of the jailer and it probably is not of sufficient consequence to warrant a separation.

Another point in controversy is a claim of the sheriff for attendance upon the probate court. That court certified that the sheriff was in attendance during four lunacy inquests and that he had been allowed a per diem of $1.50 in each case. There is no contention here that the sheriff is not entitled to a fee of $1.50

for each day he actually attends that court, nor is there any complaint about the allowance made for attendance in three. of the cases, but it is said in the fourth there was only a colorable or constructive attendance. This is based only upon the fact that the sheriff was not in the court room continuously during the hearing. How many times he left the room or how long he was absent in each instance is not shown, but it does appear that the sheriff's office is adjacent to that of the probate court, being separated by a corridor, and that the doors leading from the sheriff's office to the court room were kept open, and that when open the sheriff in his office can see and know, in a general way, what is occurring in the court room. It is also shown that the sheriff, at all times during the trial, was in or near the court room, that he was within calling distance all the time ready to respond to any request, direction or order that might be made to or upon him by either the court or counsel. This is more than a colorable attendance, within the authority of *Skinner v. Cowley County,* 63 Kan. 557, 66 Pac. 635, and for which he is entitled to compensation.

The remaining point for decision is the proper method of computing mileage earned by the sheriff in the service of process, or, rather, what is the meaning of the statute making provision for such compensation. The statute is:

"The sheriff of Shawnee county, Kansas, shall be entitled to charge . . . for every mile or fraction thereof actually and necessarily traveled each way in serving or endeavoring to serve any writ, process, order, venire, or notice, or tax warrant, ten cents; . . . and provided further, no mileage shall be taxed or allowed and no person shall be required to pay any mileage unless at the time of making returns the sheriff make and file with his returns, or as a part thereof, a statement showing the distance actually and necessarily traveled in making service on the first person, who shall be named by him, when the writ contains the names of more than one person, and the

distance actually and necessarily traveled from the place of making first service to the place of making service on second person named by him, and so on for each person served, and the distance actually and necessarily traveled in returning, so that the whole route traveled by the sheriff in making service shall clearly appear; but when the sheriff serves more than one process in the same case or on the same person, not requiring more than one journey from his office, he shall receive mileage for one service only." (Laws 1903, ch. 304, § 1.)

It is contended on behalf of the sheriff that in serving a process he is entitled to ten cents for a fraction of a mile going and another ten cents for a fraction returning; that is, if he traveled a mile and a quarter in going he was entitled to twenty cents, and also to twenty cents for the return trip. His theory is that the expression "each way," used in the statute, indicates that the distance traveled to the place of making service is to be regarded as one unit of travel, while the distance traveled in returning is another unit, and that he is entitled to ten cents for each of the fractions, although taken together they do not amount to a mile. It is reasonably clear that the legislature did not intend that the sheriff should be allowed constructive mileage. On the other hand, the act indicates that the sheriff should only be paid for the distance which he actually and necessarily travels in serving a writ, whether it contains the names of one or more persons. We think the trial court correctly held that the round trip was the unit of travel. When service is to be made on one person, the distance traveled in going to the place of service and in returning to his office are to be taken together, and only the miles or fractions of a mile actually traveled by the sheriff on the journey are to be counted. If more than one person is named in the writ, the computation is to be made on the basis of actual travel from the place of the first service directly to that of the second, and so on for each person

served, and then back to his office, and for the entire distance actually and necessarily traveled in going to the place of last service and in returning to his office the sheriff is to receive ten cents for every mile or fraction thereof.

The rulings of the court on each proposition are sustained, and its judgment is therefore affirmed.